IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| AUREA SOFTWARE, INC., | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO.: 6:21-cv-1047 |
| v. | § § | JURY TRIAL DEMANDED |
| GENERAL ELECTRIC, CO., | § § § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Aurea Software, Inc. ("Plaintiff" or "Aurea") files this Original Complaint for breach of contract, misappropriation of trade secrets, promissory estoppel, negligent misrepresentation, and unjust enrichment against Defendant General Electric, Co. ("Defendant" or "GE").

## I.
## PARTIES

1. Aurea is a corporation existing under the laws of Delaware with its principal place of business at 401 Congress Avenue, Suite 2650, Austin, Texas 78701.

2. On information and belief, Defendant GE is a New York corporation with its corporate headquarters and principal place of business in Boston, Massachusetts. On information and belief, GE may be served with process via its registered agent at CT Corp. System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this lawsuit in accordance with 28 U.S.C. §1332 because it involves an action between corporate citizens of different states. Aurea is a Delaware corporation with its principal place of business in Austin, Texas, while GE is a New York corporation whose corporate headquarters and principal place of business is in Boston, Massachusetts. The damages sought in this case exceed $75,000 exclusive of interest and costs.

4. Defendant is subject to this Court's personal jurisdiction because Defendant has minimum contacts with the State of Texas and with this judicial district, Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and within this judicial district, and Defendant regularly conducts business within the State of Texas and within this judicial district.

5. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because this district is a judicial district in which GE resides pursuant to § 1391(c)(2) and (d). Venue is also proper in this Court under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Aurea's claim occurred in this judicial district.

## III.
## FACTUAL BACKGROUND

6. Plaintiff, Aurea Technologies, Inc. owns various software offerings, including, but not limited to, Sonic ESB, an industry-leading integration framework for enterprise applications. Aurea's software offerings are used by nearly 10,000 customers. At issue in this case are Aurea's Sonic ESB CA Suite software products (collectively, the "Software").

7. On December 18, 2003, GE entered into a software license (the "2003 License") with Aurea's predecessor in interest, Sonic Software Corporation ("Sonic"). The 2003 License covered GE's use of an earlier version of the Software. Over time, GE's entitlement to use of the

Software under the 2003 License was changed through a series of amendments by which GE traded in older software and upgraded to newer software. Based on these amendments, GE currently holds perpetual licenses to four (4) cores of Sonic ESB CA Suite (Production) and one (1) core of Sonic ESB CA Suite (Non-Production), whereby each of those licensed units entitles GE to run the product on a continuous availability pair comprised of a primary or active core and a back-up or standby core on a machine configured to operate in a fault-tolerant manner. Notwithstanding these amendments, the 2003 License otherwise remains in force and effect.

8. On December 4, 2013, Aurea and GE entered into a Maintenance and Support Agreement (the "2013 Maintenance Agreement") for the Software. On December 16, 2015, Aurea and GE entered into another agreement for a two-year term of maintenance and support of perpetual software licenses for the Software that was covered by the 2013 Maintenance Agreement. The MSA ran from December 16, 2015 through December 15, 2017. In Section 8.1 of the fully executed MSA Terms and Conditions, there is an auto-renewal clause that states the following:

> Maintenance and Support Services shall automatically renew for successive terms equal to the Term in the Quote unless Customer notifies Service Provider in writing of Customer's intent not to renew or to change the term and support level within (60) days prior to the expiration of the then-current term. Fees for Maintenance and Support services provided shall be at Service Provider's then-current rates.

9. On August 22, 2017, Aurea sent GE a renewal quote for the next two-year term that was to start on December 15, 2017. On September 29, 2017 GE's response to the renewal quote was that they would "likely" cancel maintenance if Aurea would not lower the quote and asked that the quote be fixed at $207,000, the same fee as the previous term. Between August 2017 and December 2017, many emails were exchanged between the parties about the renewal. In these emails, both parties expressly acknowledged the auto-renewal and ultimately agreed on a price for

the renewal at $207,000. On December 27, 2017, GE acknowledged acceptance of the auto-renewal at $207,000 and indicated that the quote was in GE's queue. There was further correspondence on December 27, 2017 that GE was having issues with the electronic signature process and needed a different format of document, which was provided. Throughout this period, Aurea relied on the statements and promises of GE and continued to provide maintenance and support services to GE as they were working in good faith based on the representations that were made by GE as to the renewal.

10. On December 29, 2017, however, GE abruptly sent an email stating that it was not interested in renewing at this time. Based on the parties' agreement to renew and on GE's promise to renew, Aurea renewed GE at their current rates as there was never a termination notice sent and the maintenance services were still being provided. Importantly, consistent with the parties' agreement on renewal, on April 17, 2018, over 4 months after the auto-renewal, GE put in a support ticket with Aurea and Aurea provided support to GE, in direct contradiction to GE's position that they had cancelled the Agreement. Notwithstanding GE's actual knowledge of renewal of the maintenance and support agreement based on its participation in renewal negotiations, and GE's conduct in seeking and accepting support services from Aurea and in renewing, reinstating, and reviving the agreement for maintenance and support, GE now takes the position that the maintenance and support agreement was not renewed. By seeking and accepting maintenance and support services four (4) months after GE first took the position that it would not renew maintenance and support, GE effected a renewal, reinstatement, and/or revival of the maintenance and support Agreement under Section 8.2 of the MSA and under Texas common law.

11. The 2003 License and the MSA entitles Aurea to verify GE's compliance with the Aurea licenses and to obtain information about the scope of GE's use of the Aurea software.

Paragraph 13 of the 2003 License, entitled "Records Inspection," provides that GE shall maintain books and records in connection with its use of Aurea's software. Paragraph 13 further provides that GE may audit the records of GE to ensure compliance with the terms of the 2003 License. Section 11.1 of the MSA, entitled "Customer Facilities," specifies GE's obligation to make available to Aurea GE's facilities, computer resources, software programs, and networks as required to perform Aurea's services.

12. Although Aurea has the right to audit GE's use of Aurea's software under the parties' agreements, GE has refused to permit Aurea to conduct such an audit. GE has offered to perform a self-verification of its use of Aurea's Software, but such an unverified and illusory process does not and will not substantially comply with GE's audit obligations in the parties' agreements. Aurea must exercise its right to audit GE's use of its Software to determine if GE's use of the Software complies with the limitations set forth in the 2003 license as amended. Upon information and belief, Aurea believes that GE's use of the Software exceeds the limitations set forth in the 2003 License as amended.

### IV.
### CAUSES OF ACTION

**A. Breach of Contract**

13. Aurea incorporates by reference all foregoing and following allegations.

14. Aurea and GE entered into valid and enforceable contracts governing the provisions and use of the Software as well as the maintenance and support of the same. By its wrongful conduct described above, GE materially breached the contracts with Aurea.

15. Without limiting the generality of the foregoing, GE materially breached its contracts with Aurea by refusing to pay the renewal fee for maintenance and support services for

the Software for the period of December 2017 to December 2019. Aurea has demanded such payment but GE has refused to make payment.

16. In addition to failing to pay for the renewal of maintenance and support, upon information and belief, GE has materially breached the 2003 License as amended by exceeding the permitted scope of use of the Software. GE is obligated to pay Aurea for the use that exceeds the scope of use expressly permitted by the 2003 License as amended. By failing to pay Aurea for the amount of usage that exceeds the scope of the 2003 License as amended, GE has materially breached the 2003 License.

17. Further, the agreements between Aurea and GE obligate GE to allow Aurea to conduct an audit of GE's use of the Software. GE, however, refuses to let Aurea conduct such an audit and instead has offered only to perform a self-verification audit, which does not comply with the audit obligations in the parties' agreements. By refusing to permit Aurea to conduct an audit of GE's use of the Software, GE has materially breached its contracts with Aurea.

18. As a direct and proximate result of Defendant's breaches of contract, Aurea has suffered actual damages in an amount within the jurisdictional limits of this Court including, without limitation, benefit of the bargain damages, reliance damages, lost profits damages, incidental and consequential damages, attorneys' fees, pre- and post-judgment interest, and costs of suit.

19. Aurea also seeks an order from the Court compelling GE to permit Aurea to conduct an in-person audit of GE's network, software programs, and related computer hardware to determine the scope of GE's use of the Software.

20. Aurea is ready, willing and able to timely perform its obligations under the 2003 License as amended, and is not in material breach of the 2003 License as amended. Aurea has

also complied with or fulfilled all possible conditions to enforcement of the right to conduct an audit.

## B.  Misuse and Misappropriation of Confidential Information and Trade Secrets

21  Aurea incorporates by reference all foregoing and following allegations.

22.  By using the Software in excess of the scope provided by the 2003 License as amended and without Aurea's permission for such use, GE is wrongly using and misappropriating the Software which is information that is proprietary and confidential to Aurea and qualifies as an Aurea trade secret.  The Software is not generally known to and is not readily ascertainable to being known by the public. In accordance with Sections 3 and 14 of the 2003 License, GE expressly acknowledged that the Software is confidential, proprietary, and a trade secret.

23.  At all times, Aurea has protected the confidentiality and secrecy of the Software by not disclosing it to any party who did not agree to protect its confidentiality by accepting the confidentiality terms set forth in the license agreements that governed use of the Software.  More specifically, Aurea has maintained the confidentiality and secrecy of the Software by taking the following steps: (1) users of the Software are required to sign licenses that contain confidentiality and nondisclosure agreements; (2) licensed users are required to restrict access to the Software and other confidential information to only those employees or contractors that require access in the course of their assigned duties and responsibilities and who have agreed in writing to be bound to confidentiality and nondisclosure obligations; (3) the number of copies of the Software used by GE is restricted by the parties' agreements; (4) users of the Software are not permitted to allow reverse engineering, modification, or decompilation of the Software; and (5) the Software may not be transferred, sold, assigned, leased, or licensed to another party without Aurea's prior written consent.

24. The Software has significant economic value to Aurea and Aurea expended substantial resources researching and developing the Software. This research and development work was based on and involved knowledge and expertise about software that is not otherwise known in the industry. The Software is comprised of and includes Aurea's confidential information and constitutes valuable Aurea trade secrets that are unknown to the general public.

25. GE has knowingly and willfully misused and misappropriated Aurea's confidential information and trade secrets by improperly using the Software without Aurea's express or implied license or consent. GE's use in excess of the scope of limitations set forth in the amended 2003 License amounts to a knowing and willful misuse and misappropriation of Aurea's confidential and trade secret information.

26. GE has knowingly and willfully misappropriated Aurea's trade secrets and confidential information in the furtherance of its business in violation of Texas common law misappropriation of trade secrets. Such wrongful conduct has proximately caused Aurea damages.

27. Aurea seeks to recover all actual, incidental, and consequential damages for its loss caused by the misappropriation and excessive use of the Software, including, without limitation, lost license revenue, lost profits damages, reasonable royalty damages, and the value of the information misused and misappropriated by GE, as well as incidental and consequential damages, attorneys' fees, pre- and post-judgment interest, and costs of suit.

**C.  Promissory Estoppel**

28. Aurea incorporates by reference all foregoing and following allegations.

29. As detailed above, GE represented and promised to Aurea that it was renewing maintenance and support of the Software.

30. In addition to GE's statements and representations, GE's conduct in actually seeking support months after the renewal date demonstrated that GE had in fact renewed maintenance and support.

31. Based on GE's statements and conduct, Aurea reasonably relied on GE's promises and continued to provide maintenance and support services to GE. Having promised to renew maintenance and support, and having engaged in conduct consistent with that promise, GE is estopped to deny that maintenance and support for the Software was renewed.

32. Aurea's reliance on GE's statements and conduct was foreseeable by GE.

33. Injustice can be avoided only by enforcing GE's promise(s) and by awarding Aurea the renewal fee for the renewal of maintenance and support of the Software, as well as any other actual damages suffered by Aurea, including, without limitation, benefit of the bargain damages, reliance damages, lost profits damages, incidental and consequential damages, attorneys' fees, pre- and post-judgment interest, and costs of suit.

**D.  Negligent Misrepresentation**

34. Aurea incorporates by reference all foregoing and following allegations.

35. As detailed above, GE made representations of fact to Aurea relating to the renewal of maintenance and support of the Software, and GE had a pecuniary interest in these statements. These statements and representations include but are not limited to statements that GE agreed to Aurea's renewal quote that included a "flat renewal" at the same price as the prior maintenance and support period, that GE was working on signing the agreed renewal quote, and that GE wanted a version of the renewal quote that it could electronically sign.

36. In addition to GE's statements and representations, GE's conduct in actually seeking support months after the renewal date demonstrated that GE had in fact renewed maintenance and support.

37. GE did not use reasonable care in obtaining information underlying these representations and did not use reasonable care in making these representations to Aurea. Aurea justifiably and reasonably relied on GE's misrepresentations, and the misrepresentations proximately caused injury to Aurea, including, without limitation, benefit of the bargain damages, reliance damages, lost profits damages, incidental and consequential damages, attorneys' fees, pre- and post-judgment interest, and costs of suit.

**E.  Quasi-Contract/Unjust Enrichment/Quantum Meruit**

38. Aurea incorporates by reference all foregoing and following allegations.

39. Aurea created the Software through extensive time, labor, skill, and money. By its wrongful use of the Software in excess of the scope permitted by the parties' agreements, GE wrongfully received the benefit of the use of the Software without paying for such excessive use. In addition to the express obligations set forth in the parties' agreements, these circumstances give rise to an implied and/or quasi-contractual obligation for GE to pay for its excessive use of the Software. GE's obligation to pay for its excessive use of Aurea's software is imposed by law to do justice.

40. In addition, GE accepted, used, and enjoyed the benefits of the use of the Software in excess of the scope permitted by the parties' agreements. Although GE has been notified that Aurea expects payment for such excessive use, GE has refused to make such payment. GE's refusal to make payment for its misappropriation and excessive use of the Software proximately caused injury to Aurea, including, without limitation, lost license revenue, lost profits damages,

reasonable royalty damages, and the value of the information unjustly used and misappropriated by GE, as well as incidental and consequential damages, attorneys' fees, pre- and post-judgment interest, and costs of suit.

## V.
## ATTORNEY'S FEES, COSTS, AND LATE PAYMENT FEES

41. As a result of GE's wrongful conduct, Aurea has been required to retain the undersigned law firm to prosecute this action. Consequently, in accordance with Section 38.001 of the Texas Civil Practice and Remedies Code, Aurea is entitled to recover its costs and reasonable and necessary attorneys' fees from Defendant. In addition, in accordance with Section 13 of the 2003 License as amended, Aurea is entitled to recover the reasonable costs of conducting an audit of GE's use of Aurea's software. Also, in accordance with section 11.21 of the MSA, Aurea is entitled to be paid late payment fees for all past due payments.

## VI.
## CONDITIONS PRECEDENT

42. All conditions precedent to Aurea's right to bring this action have been performed or occurred. GE's substantial and material breaches of the MSA and the 2003 License as amended have excused any obligations Aurea has under these agreements.

## VII.
## TOLLING

43. Because of GE's conduct as set forth above, Aurea pleads the tolling doctrine of the discovery rule and fraudulent concealment to the extent that GE asserts the statute of limitations or laches as an affirmative defense to its liability.

## VIII.
## JURY DEMAND

44. Aurea demands a trial by jury of any and all issues triable of right before a jury.

# IX.
# PRAYER

WHEREFORE, Plaintiff Aurea Software, Inc. prays for the following relief against Defendant General Electric Company:

A.     A judgment in favor of Aurea against GE on the causes of action set forth above;

B.     A judgment against GE awarding Aurea all of its actual damages, including without limitation its expectation/benefit of the bargain damages, lost profits, restitution and unjust enrichment damages, and its incidental and consequential damages, together with an award of pre- and post-judgment interest, fees, and costs;

C.     An order from the Court compelling GE to permit Aurea to conduct an in-person audit of GE's network, software programs, and related computer hardware to determine the scope of GE's use of the Software;

D.     Attorneys' fees; and

E.     Such other and further relief in law or in equity to which Aurea may be justly entitled.

Date: October 8, 2021.

Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**
Travis C. Barton
State Bar No. 00790276
Michael E. Kabat
State Bar No. 24050847
Ian Davis
State Bar No. 24120793
1111 W. 6th Street, Suite 400
Austin, Texas 78703
(512) 495-6041
(512) 495-6093 (Fax)
tcbarton@mcginnislaw.com
mkabat@mcginnislaw.com
idavis@mcginnislaw.com


By: /s/ Travis C. Barton
     Travis C. Barton

*Attorneys for Plaintiff Aurea Software, Inc.*